*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACOB ABRAHAM, INDICA, LLC, and TEL 12
GROUP, LLC,

        Plaintiffs-Appellants,

v

HESHAM GAYAR, TAREK GAYAR, PAUL
LUTFY, ABCD, LLC, H & T HOLDINGS, LLC,
HTP TELEGRAPH, LLC, and PGL GREEN
ENTERPRISES, LLC,

        Defendants-Appellees.

UNPUBLISHED
September 22, 2025
1:48 PM

No. 371906
Oakland Circuit Court
LC No. 2022-193280-CB

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Plaintiffs, Jacob Abraham; Indica, LLC; and Tel 12 Group, LLC, appeal by right the trial court's order correcting and confirming an arbitration award in favor of defendants, Hesham Gayar (Hesham); Tarek Gayar (Tarek); Paul Lutfy; ABCD, LLC; H & T Holdings, LLC; HTP Telegraph, LLC; and PGL Green Enterprises, LLC. We affirm.

## I. BACKGROUND

Defendants Hesham and Tarek owned defendant H & T Holdings, LLC (H & T). H & T owned property in Southfield, Michigan, on which Hesham and Tarek operated a gas station (the Property). Defendant Lutfy owned a gas station and convenience store directly across the street from the Property, and he had a pre-existing business relationship with Tarek.[1] Plaintiff Abraham, who was a longtime family friend of Lutfy's, solely owned and operated plaintiff Indica, LLC

---

[1] Tarek supplied gas to the gas station that he and Hesham owned and to the station owned by Lutfy.

(Indica), an entity that owned and operated multiple marijuana provisioning centers throughout Michigan under the brand name "Sticky."

In October 2019, the Southfield City Council revised its zoning ordinance to allow medical marijuana provisioning centers to operate in limited locations in the area. Lutfy learned that the Property fell within one of these limited locations, so he proposed to Hesham and Tarek that the three form a partnership in the marijuana business and jointly redevelop the gas station on the Property into a provisioning center. The brothers agreed to this suggestion, and also agreed to Lutfy's further suggestion that Abraham join their partnership given his existing knowledge of, experience with, and connections in the marijuana business. Additionally, Abraham and Indica were preapproved for a license for selling marijuana, which was a prerequisite for any party applying for a marijuana provisioning center in one of the new limited locations.

Lutfy, Tarek, and Abraham met on the Property in September 2019 and verbally agreed to certain material elements to begin their business venture, and they began working toward establishing a provisioning center on the Property. In November 2019, Indica entered into a lease agreement with H & T for the property,[2] and Abraham, through Indica, subsequently submitted an application for the provisioning center to the City. The application was eventually approved in April 2020, and in September 2020 the parties formed plaintiff Tel 12 Group, LLC (Tel 12) to own and operate the provisioning center on the Property. In February 2021, the individuals, through their respective companies—defendant ABCD, LLC (ABCD) (Tarek's company), defendant PGL Green Enterprises, LLC (PGL) (Lutfy's company), and Indica (Abraham's company)—signed a formal operating agreement for Tel 12, which detailed the original terms of the parties' verbal agreement and assigned a 60% membership interest to ABCD, a 20% membership interest to PGL, and a 20% membership interest to Indica. Construction of a new building for the provisioning center began in May 2021.

In September 2021, after much dispute between the parties regarding the name, ownership, and operation of the provisioning center, Tarek and Lutfy, as majority members, voted to dissolve Tel 12. Immediately thereafter, H & T terminated the lease agreement with Indica, and Tarek and Lutfy formed defendant HTP Telegraph, LLC (HTP) and began operating the provisioning center on the Property without Abraham and Indica.

In March 2022, plaintiffs filed a complaint against defendants, alleging breach of contract (Count I); intentional, negligent, and innocent misrepresentation (Counts II-IV); unjust enrichment (Count V); breach of fiduciary duties (Count VI), inducement of breach of fiduciary duties as to defendant Hesham (Count VII); and a cause of action under MCL 450.4515, commonly known as minority member oppression (Count VIII).[3] Defendants filed a motion for summary disposition on all counts in August 2023, which the trial court partially granted in September 2023. Specifically, the court granted summary disposition in defendants' favor as to Counts I, V, VI, and

---

[2] Because Indica did not own the Property, a lease agreement between Indica and H & T was required before Indica could submit the application for the provisioning center.

[3] Plaintiffs filed an amended complaint in February 2023 to add Tel 12 as a plaintiff; ABCD, PGL, H & T, and HTP as defendants; and Counts VI-VIII.

VII, but denied summary disposition as to Counts II, III, IV, and VIII because questions of fact remained as to those counts, and the court transferred the matter to the business court for further proceedings.

Following the transfer of the case, the parties each filed with the new trial court a motion for reconsideration of the prior court's order partially granting summary disposition to defendants. In November 2023, while those motions were still pending, the parties signed an arbitration agreement in which they agreed to dismiss the entire case without prejudice and to resolve the dispute through statutory arbitration. The trial court thereafter issued a stipulated order reflecting this agreement, dismissing the case without prejudice because "[t]he parties have agreed to submit this matter of binding arbitration" and providing that, "notwithstanding this dismissal, the Court shall retain jurisdiction pending completion of the arbitration in accordance with the arbitration agreement signed by the parties to, *inter alia*, enter judgment on the award."

After a four-day arbitration proceeding during which all parties presented a plethora of documentary evidence and testimony, the arbitrator issued an award in defendants' favor. In doing so, the arbitrator concluded that there was no genuine issue of material fact as to any of plaintiffs' misrepresentation claims and that there was no cause of action under MCL 450.4515 because defendants did not violate the statute.

Plaintiffs subsequently filed a motion to vacate and/or modify and correct the arbitration award, arguing that the award was based on several erroneous factual determinations, that the arbitrator committed misconduct prejudicing plaintiffs' rights by making such erroneous factual determinations, and that the arbitrator exceeded his authority as detailed in the arbitration agreement by failing to base the award on proper facts presented at the arbitration proceedings and on controlling principles of Michigan law. Defendants filed a response in opposition and a cross-motion to confirm the arbitration award, arguing that plaintiffs simply disagreed with the arbitrator's factual findings and that the court was prohibited from substantively reviewing those findings and thus could not vacate the award on such grounds.

In July 2024, the court issued an opinion and order denying plaintiffs' motion to vacate and/or modify the arbitration award and granting defendant's cross-motion to confirm the award.[4] The court concluded that "[p]laintiffs' protests boil[ed] down to impermissible attacks of the Arbitrator's factual determination," and "[t]o grant the relief requested would go the merits of the claim, contract interpretation (the dispute involves, among other things, an operating agreement), and/or review the factual findings of the arbitrators [sic] – all of which are barred under binding Michigan jurisprudence." This appeal followed.

## II. ANALYSIS

On appeal, plaintiffs argue that the trial court erred by denying their motion to vacate and/or modify and correct the arbitration award and instead correcting and confirming the award as

---

[4] Pursuant to defendants' request in their cross-motion, the court first corrected a clear scrivener's error before confirming the arbitration award.

-3-

requested by defendants.[5] We review "de novo a trial court's decision to enforce, vacate, or modify an arbitration award." *Ann Arbor v American Federation of State, Co, & Muni Employees (AFSCME) Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). "The court's power to modify, correct, or vacate an arbitration award, however, is very limited." *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495; 475 NW2d 704 (1991). Indeed, "[a] court may not review an arbitrator's factual findings or decision on the merits. Instead, a court may only review an arbitrator's decision for errors of law." *TSP Servs, Inc v Nat'l-Std, LLC*, 329 Mich App 615, 620; 944 NW2d 148 (2019) (quotation marks and citations omitted). "[E]rror, if any, must be evident from the face of the award and so material or so substantial as to have governed the award, and but for which the award would have been substantially otherwise." *Gordon Sel-Way*, 438 Mich at 497 (quotation marks and citation omitted). Absent such an error, court intervention is not warranted, and the arbitrator's award and decision will not be set aside. *TSP Servs*, 329 Mich App at 620.

On appeal, plaintiffs in this case assert that the trial court erred in two ways. First, plaintiffs argue that the arbitrator exceeded his authority when making factual findings in support of the award, so the court was obligated to vacate the award pursuant to MCL 691.1703(1)(d). Second, plaintiffs argue that the court was obligated to vacate or, at minimum, modify the award because the arbitrator made several erroneous factual determinations on which the award was based.

As to their first argument, plaintiffs assert that the arbitrator exceeded the authority provided to him in the arbitration agreement because he simply adopted certain findings of fact that the trial court had made in its prior order granting summary disposition to defendants on certain claims, rather than independently making his own findings based on the evidence presented during arbitration. Plaintiffs argued below that the arbitrator exceeded his authority. Plaintiffs did not, however, challenge before the trial court the arbitrator's adoption of the court's prior findings of fact. Accordingly, plaintiffs have waived appellate review of this argument, and we decline to overlook that waiver. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (emphasizing that "Michigan follows the 'raise or waive' rule of appellate review" and that a party waives appellate review of an issue when the party has not "show[n] that the same basis for the error claimed on appeal was brought to the trial court's attention") (quotation marks and citation omitted).[6]

---

[5] Plaintiffs originally raised three issues in their brief on appeal, the first two of which were related to the pre-arbitration order partially granting summary disposition in defendants' favor, and the third of which was related to the order confirming the arbitration award. This Court, however, struck the first two issues from appellants' brief for lack of jurisdiction. *Abraham v Gayar*, unpublished order of the Court of Appeals, entered November 20, 2024 (Docket No. 371906). Thus, the only issue remaining for consideration on appeal is plaintiffs' challenge to the trial court's order confirming the arbitration award.

[6] We note, however, that the substance of plaintiffs' argument focuses heavily on their disagreement with the arbitrator's factual determinations, and it is well settled that a party cannot use a claim that an arbitrator exceeded their authority as a means to secure judicial review of the

As to their second argument, plaintiffs claim that many of the arbitrator's factual findings were contrary to the evidence presented during arbitration, and they ask this Court—as they had previously asked the trial court—to review those factual findings and deem them erroneous. But, as the trial court duly recognized, a court's review of an arbitration award is "very limited," *Gordon Sel-Way*, 438 Mich at 495, and it is well established that "[a] court may not review an arbitrator's factual findings or decision on the merits," *TSP Servs*, 329 Mich App at 620 (quotation marks and citation omitted). Nor may this Court second-guess the arbitrator's interpretation of the parties' contract or "substitute its judgment for that of the arbitrator." *AFSCME Local 369*, 284 Mich App at 144. Despite plaintiffs' protestations to the contrary, their challenge falls squarely within this prohibited space and is thus outside the proper scope of the trial court's, and this Court's, review. See *id*.; see also *Gordon Sel-Way*, 438 Mich at 495; *TSP Servs*, 329 Mich App at 619-620, 624. Accordingly, plaintiffs are not entitled to relief on this issue.[7]

Affirmed.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock

---

merits of the arbitrator's factual findings. See *Gordon Sel-Way*, 438 Mich at 497 ("[A]n allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision.").

[7] In a single, conclusory sentence in their brief on appeal, plaintiffs assert that the arbitrator committed misconduct prejudicing their rights as a party to the arbitration because "the arbitrator's award ignored the evidence presented," therefore requiring the trial court to vacate the award in accordance with MCL 691.1703(1)(b)(*iii*). To the extent plaintiffs intend this argument as a distinct claim of error whose disposition would not be controlled by the analysis above, they have failed to adequately brief it, and we correspondingly decline to address it any further. See *Reighard v ESPN, Inc*, 341 Mich App 526, 545; 991 NW2d 803 (2022).