DICK v DICK

Docket Nos. 163351, 164374, 167468. Submitted October 18, 1994, at Lansing. Decided May 12, 1995, at 10:00 A.M.

Leslie Dick brought an action in the Oakland Circuit Court seeking a divorce from Linda Dick. The parties agreed to binding arbitration, and the court, David F. Breck, J., entered a judgment that divided the marital estate, awarded custody of the parties' child, and ordered payment of child support, all as determined by the arbitrator. The plaintiff appealed.

The Court of Appeals *held:*

1. The parties did not bring about the appointment of a private judge, which is not allowed under the law, in agreeing to binding arbitration. Authority for binding arbitration in domestic relations cases may be found in MCR 3.216, which governs mediation in domestic relations cases and expressly provides that courts are not prohibited from using other settlement procedures. The Court of Appeals has approved the use of binding mediation in resolving issues of property division in divorce cases. Accordingly, in light of the court rule and case law permitting parties in divorce actions to agree to other settlement procedures, binding arbitration is an appropriate procedure for resolving issues of property division in divorce cases.

2. Binding arbitration is appropriate for resolving issues of child support in light of authority granted to a circuit court by the Child Custody Act, MCL 722.27; MSA 25.312(7), to enter child support orders to which the parties have agreed and to order the payment of child support in amounts that deviate from the child support formula if application of the formula would be unjust and the court explains its reasons in writing or on the record.

3. Binding arbitration is appropriate for resolving issues of

REFERENCES

Am Jur 2d, Arbitration and Award § 54; Divorce and Separation §§ 817-830, 864-865, 982, 986, 1018-1023.

Validity and construction of provision for arbitration of disputes as to alimony or support payments, or child visitation or custody matters. 18 ALR3d 1264.

child custody in light of broad language in the Uniform Arbitration Act, MCL 600.5001; MSA 27A.5001, allowing persons to agree in writing to submit to arbitration any controversy that might otherwise be the subject of a civil action, and in light of the absence from case law, statute, or court rule of a prohibition of binding arbitration for resolution of child custody disputes.

4. The parties' arbitration agreement is invalid to the extent that its provisions for judicial review do not comport with MCR 3.602(J), which provides that an arbitration award may not be set aside unless the award was procured by corruption, fraud, or other undue means, the arbitrator evidenced partiality, corruption, or misconduct prejudicing a party's rights, the arbitrator exceeded the arbitrator's powers, or the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear material evidence, or conducted the hearing to prejudice substantially a party's rights.

5. The trial court did not misuse its powers of contempt in forcing the plaintiff to sell the marital home, pay the defendant a sum of money, and return defendant's personal property.

6. The trial court did not err in appointing a receiver to sell the marital home and in ordering the receiver to sell the home.

Affirmed.

DIVORCE — BINDING ARBITRATION — PROPERTY DIVISION — CHILD SUPPORT — CHILD CUSTODY — APPEAL.

The parties to an action for divorce may agree to binding arbitration for the resolution of issues of property division, child support, and child custody; a divorce judgment based on an arbitrator's award will not be set aside on appeal in the absence of an indication that the award was procured by corruption, fraud, or other undue means, that the arbitrator evidenced partiality, corruption, or misconduct prejudicing a party's rights, that the arbitrator exceeded the arbitrator's powers, or that the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear material evidence, or conducted the hearing to prejudice substantially a party's rights (MCR 3.216, 3.502[J]; MCL 600.5001, 722.27; MSA 27A.5001, 25.312[7]).

*Abraham Selesny* (*Judith A. Curtis*, of Counsel), for the plaintiff.

*Williams, Schaefer, Ruby & Williams, P.C.* (by *James P. Cunningham*), for the defendant.

Before: Neff, P.J., and Marilyn Kelly and P. R. Joslyn,* JJ.

Per Curiam. Plaintiff, Leslie Dick, appeals from a judgment of divorce that disposed of the property and assets of the parties and awarded custody of their child to defendant, Linda Dick. On appeal as of right, plaintiff challenges the validity of the arbitration procedure to which he had agreed, as well as the substantive determinations of the arbitrator. He contests, in particular, the award of custody of the child to defendant. We affirm.

### THE PROCEDURAL BACKGROUND

Plaintiff and defendant had been married approximately 2½ years before plaintiff initiated divorce proceedings. They had one son.

After both sides filed their initial pleadings, they agreed to submit all issues, including the division of property and child custody and support, to binding arbitration. On March 30, 1990, the court entered an order providing for binding arbitration, naming an arbitrator, and setting forth the parties' agreed-upon conditions. Notable among them were the following:

> B. The Arbitrator shall be considered, in all respects, to be a substitute for the Circuit Judge in this case and shall be accorded all of the powers, duties, rights and obligations of the Circuit Judge, including, but not necessarily limited to, the determination of all issues present in this divorce action, including all pre-judgment (discovery, etc.) and judgment matters involving the parties to this litigation and their minor child.
>
> * * *
>
> It is further ordered that the decision of the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Arbitrator, as incorporated in the Judgment of Divorce, shall be appealable to the Court of Appeals on the same basis and with the same legal effect as though the decision had been rendered by the Circuit Judge;

IT IS FURTHER ORDERED that any appeal of this matter to the Court of Appeals shall not be based on the procedure which the Arbitrator has deemed to be reasonable, as set forth above, but shall be based solely on the substantive decision of the Arbitrator; neither party having the right to a trial de novo in this matter, except as it may be based upon errors of substance (as opposed to procedure) committed by the Arbitrator which the Court of Appeals determines to necessitate such trial de novo.

More than two years later, the arbitrator issued his opinion. The length of the arbitration proceedings is directly related to the acrimonious approach of the parties, especially plaintiff. But for the vexatious litigation tactics employed by the parties throughout the proceedings, this matter could have been resolved in a more expeditious manner. At this point, the parties' divorce proceedings have lasted nearly twice as long as their marriage.

Ultimately, the arbitrator issued a comprehensive, detailed opinion. In determining custody, he made findings of fact regarding the "best interests of the child" factors set forth in MCL 722.23; MSA 25.312(3). The circuit court then entered a judgment of divorce that fully incorporated the arbitrator's conclusions.

### THE APPELLATE ISSUES

On appeal, plaintiff first attacks the validity of the arbitration agreement. He asserts that it was void ab initio, because it was tantamount to the

appointment of a private judge by the circuit court. Alternatively, he argues that, if deemed valid by our Court, the arbitration agreement is void because Michigan does not recognize binding arbitration in divorce agreements. He stresses that arbitration is not an acceptable procedure for resolving issues of child custody and support. He requests that we vacate the order of divorce and remand the entire case to the trial court for expedited reconsideration before a different circuit judge.

### THE EFFECT OF A CONSENT ORDER FOR BINDING ARBITRATION

We agree with plaintiff's contention that the circuit court is without authority to appoint a private judge. *Brockman v Brockman,* 113 Mich App 233, 238; 317 NW2d 327 (1982).

The parties' arbitration agreement variously characterizes the arbitrator as a "private judge." We find that the references are at most colloquial expressions describing the extent of the arbitrator's powers by analogy to judicial functions, and no more. The agreement does not purport to make of the arbitrator a judge "acting under the color of right as a duly appointed judge." *Id.* The parties sought permission from the circuit court to enter into binding arbitration. The circuit court ordered binding arbitration. Later, it incorporated the arbitrator's decision in the order of divorce. We hold that the agreement was one for binding arbitration, not one void ab initio as appointing a private judge.

Because the parties invoked binding arbitration, we must consider whether that procedure may be used in divorce proceedings. Moreover, we must determine whether the binding arbitration agreement at issue here is valid.

Both common law and statutory arbitration have well-established histories in Michigan. In recent years, practitioners have made widespread efforts, with some success, to add binding arbitration to the alternative-dispute-resolution methods available to resolve contested divorces. But no state appellate court has resolved the acceptability of binding arbitration in resolving divorce and, particularly, custody issues.

Authority to permit the use of binding arbitration may be found in MCR 3.216. Although the court rule concerns itself with mediation in domestic relations proceedings, it contains a fairly broad grant of authority regarding settlement procedures. It provides:

> (A) Scope and Applicability of Rule. A court may submit any pending divorce, separate maintenance, or annulment proceeding, including post-judgment matters, to mediation under this rule for the purposes of attempting to settle contested issues. Nothing in this rule
>
> \* \* \*
>
> (3) prohibits the court from ordering, on stipulation of the parties, the use of modified mediation or other settlement procedures.

We emphasize that the rule primarily is concerned with mediation rather than binding arbitration. But it does authorize specifically the use of other unenumerated "settlement procedures" to resolve domestic disputes. Binding arbitration certainly qualifies as a settlement procedure.

Moreover, our Court has approved the use of binding mediation to resolve property distribution issues in divorce cases. *Marvin v Marvin,* 203 Mich App 154, 157; 511 NW2d 708 (1993). In *Marvin,* our Court relied on MCR 3.211(A)(3), the provi-

sions of which are comparable to those of the present MCR 3.216(A)(3) set out above. In *Marvin,* we also reiterated the recent ruling of our Court that

> where the parties to a divorce action agree to submit certain issues to a third party and to accept the decision of the third party as binding, they are bound by the third party's decision absent a showing of such factors as duress or fraud. [*Marvin,* p 157, citing *Balabuch v Balabuch,* 199 Mich App 661, 662; 502 NW2d 381 (1993).]

Because authority exists in both court rule and case law for permitting parties to agree to "other settlement procedures," we hold that binding arbitration is appropriate to resolve property distribution issues.

### CHILD SUPPORT

However, because child custody and support are not property issues, we must examine separately the legal validity of an agreement to submit them to binding arbitration.

The Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.,* grants circuit courts the power to enter a support order to which the parties have agreed. The amount may deviate from the recommendation under the child support formula, if the requirements of MCL 722.27(2); MSA 25.312(7)(2) are met. Subsection 2 permits deviation from the recommendation if application of the recommendation would be unjust and the court has explained the reasons in writing or on the record. MCL 722.27(2); MSA 25.312(7). See also *Balabuch, supra,* p 662.

This provision permits us to conclude that child support disputes also may be submitted to arbitra-

tion pursuant to the agreement of the parties. However, because the provision deals solely with the question of support, it is insufficient, standing alone, to permit us to analogize that child custody may also be submitted to arbitration.

### CHILD CUSTODY

Further analysis is required to determine whether child custody may be submitted to binding arbitration, especially because it is a matter of first impression in the state.

In our analysis, we must balance: (1) case law that has led to the widely held belief that custody decisions are the exclusive province of the circuit court, (2) the requirements of the Child Custody Act, and (3) the effect of the Uniform Arbitration Act, MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*

Thirty-six years ago, our Supreme Court examined the role of the friend of the court in custody issues. *Campbell v Evans,* 358 Mich 128; 99 NW2d 341 (1959). It concluded that the friend of the court could not decide custody and said:

> The responsibility for the ultimate decision and the exercise of judicial discretion in reaching it still rests squarely upon the trial judge. These grave prerogatives he may never delegate to others. [*Id.,* p 131.]

The Court quoted with approval from an earlier opinion that also dealt with utilization of the friend of the court in a custody determination. There the Court said:

> We believe that circuit courts have no more important or more difficult hearing function than that of careful handling of custody problems involving minor children. . . . [T]he circuit judge

cannot delegate his ultimate responsibility in contested cases for the hearing of evidence and the determination of issues. [*Bowler v Bowler,* 351 Mich 398, 407; 88 NW2d 505 (1958). Citations omitted.]

Thus, from at least that time, circuit courts have zealously and carefully refrained from permitting the friend of the court or any other party or agency to make custody determinations.

### CASE LAW

As recently as 1994, our Court attempted to follow this instruction, while also permitting the parties to stipulate custody in a consent judgment of divorce. *Koron v Melendy,* 207 Mich App 188, 191-193; 523 NW2d 870 (1994). In *Koron,* the parties placed on the record their agreement regarding custody of and visitation with their minor daughter. The court's order of divorce comported with the parties' custody and visitation agreement. The defendant appealed, arguing that the trial court erred in accepting the stipulation without first making findings of fact regarding the best interests of the child, as required by MCL 722.23; MSA 25.312(3).

Our Court affirmed the order of divorce and custody. It first noted that a trial court is not bound by the parties' stipulations or agreements regarding child custody, citing *Napora v Napora,* 159 Mich App 241, 245; 406 NW2d 197 (1986). However, the Court concluded that the trial court also is not precluded from accepting the parties' agreement and including it in the court order.

The Court also disposed of the defendant's claim that findings of fact regarding the best interests of the child must be made in every case. It concluded

that, if the parties are in agreement regarding custody and visitation, it

> need not expressly articulate each of the best interests factors. Implicit in the court's acceptance of the parties' agreement is its determination that the arrangement is in the child's best interests. [*Koron, supra,* pp 192-193.]

### STATUTES AND COURT RULES

The early and general statements of our Supreme Court regarding the grave duty of judges to dispose of custody matters require deference and compliance. However, they must be balanced against the language of the Uniform Arbitration Act, which became effective in 1963. MCL 600.5001; MSA 27A.5001 provides:

> (1) All persons, except infants and persons of unsound mind, may, by an instrument in writing, submit to the decision of 1 or more arbitrators, any controversy existing between them, which might be the subject of a civil action, except as herein otherwise provided, and may, in such submission, agree that a judgment of any circuit court shall be rendered upon the award made pursuant to such submission.

We recognize our obligation to read the language of the arbitration statute in light of previously established rules of common law. *In re Childress Trust,* 194 Mich App 319, 326; 486 NW2d 141 (1992). We acknowledge that well-settled common-law principles are not to be abolished by implication; an ambiguous statute that contravenes common law must be interpreted so as to make the least change in the common law. *Marquis v Hartford Accident & Indemnity (After Re-*

*mand),* 444 Mich 638, 652-653; 513 NW2d 799 (1994); *Energetics, Ltd v Whitmill,* 442 Mich 38, 51; 497 NW2d 497 (1993).

Yet, if a statute is clear on its face, judicial construction is not required or permitted. *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992). Furthermore, the Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741, 744; 453 NW2d 301 (1990).

The language of the arbitration statute is broad and seemingly all inclusive. It permits all persons to submit any controversy to arbitration upon their agreement. It does not specifically exempt any civil action from binding arbitration. Thus, balancing the Court's instructions to the lower courts regarding custody determinations with the arbitration statute's more recent and broad language, custody disputes are not exempted from arbitration.

Furthermore, we find in no other statute a clear prohibition of arbitration of child custody. The Child Custody Act does not prevent it. Instead, it provides that, where a child custody dispute has been submitted to the circuit court as an original action under the act, the circuit court has the authority to "[t]ake any other action considered to be necessary in a particular child custody dispute." MCL 722.27(1)(f); MSA 25.312(7)(1)(f). Such language seems to raise a question whether custody disputes may be decided only by the court. There is throughout the act language directing how to proceed where the dispute is handled by the court. For example, MCL 722.23; MSA 25.312(3) states:

> As used in this act, "best interests of the child" means the sum total of the following factors *to be considered, evaluated, and determined by the court* . . . . [Emphasis added.]

Yet, even there, where the function and authority of the court are detailed, use of alternative methods to determine the best interests of the child are not specifically prohibited. Particularly when this portion of the statute is read in conjunction with the broad grant of authority found in MCL 722.27(1)(f); MSA 25.312(7)(1)(f), binding arbitration appears to be a legitimate alternative method.

We have also considered in our decision the language of MCR 3.210(C), Custody of a Minor. That court rule states:

> (1) When the custody of a minor is contested, a hearing on the matter must be held within 56 days
> (a) after the court orders, or
> (b) after the filing of notice that a custody hearing is requested, unless both parties agree to mediation under MCL 552.513; MSA 25.176(13) and mediation is unsuccessful, in which event the hearing must be held within 56 days after the final mediation session.

The Friend of the Court Act, cited in the court rule, requires the friend of the court to provide domestic relations mediation to assist the parties in voluntarily settling custody or visitation disputes. MCL 552.513; MSA 25.176(13).

We do not believe that MCR 3.210(C) precludes binding arbitration. It requires a hearing in a contested case. Yet, if the parties agree to binding arbitration, they effectively move the dispute to a different forum. The court rule does not appear to prohibit such action. The requirement of a hearing, if voluntary nonbinding mediation fails, is equally understandable. If mediation is chosen and fails, the custody dispute remains to be resolved and, save intervention by the courts, there is no other means of resolution. That is not the case if binding arbitration is elected.

Thus, we find no clear prohibition in case law, court rule, or statute against the use of binding arbitration in the resolution of custody disputes. Binding arbitration is an acceptable and appropriate method of dispute resolution in cases where the parties agree to it. Furthermore, the decision of an arbitrator does not prevent a party from seeking to change custody or modify support in the future.

### THE AVAILABILITY OF JUDICIAL REVIEW

However, our analysis as it relates to the arbitration agreement at issue here is not yet complete. Several provisions of the agreement do not comport with the requirements of the arbitration statute. The agreement denies any appeal of the procedural methods adopted by the arbitrator but permits appeal of the substantive issues to our Court.

The parties have attempted to create a hybrid form of arbitration. However, we find no authority for it. Rather, we conclude that, having invoked binding arbitration, the parties are required to proceed according to the applicable statute and court rule. MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*; MCR 3.602.

According to the court rule, an arbitration award may not be set aside unless (1) the arbitrator or another is guilty of corruption, fraud, or used other undue means; (2) the arbitrator evidenced partiality, corruption, or misconduct prejudicing a party's rights; (3) the arbitrator exceeded the arbitrator's power; or (4) the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear material evidence, or conducted the hearing to prejudice substantially a party's rights. MCR 3.602(J); *Gordon Sel-Way, Inc*

*v Spence Bros, Inc,* 438 Mich 488, 495; 475 NW2d 704 (1991). Otherwise, the agreement is to be given broad application. Only limited review by the courts is permitted. *Id.*

The parties' agreement to appellate review in this case is reminiscent of a mechanism under which the initial ruling is by a private judge, not an arbitrator. We earlier concluded that the parties did not seek to create, and the circuit court lacked the authority to appoint, a private judge. What the parties agreed to is binding arbitration. Thus, they are not entitled to the type of review they attempted to create. See *Brockman, supra.*

Consequently, we reform the binding arbitration agreement to comport with the requirements of the statutes and the court rules. We strike the clause permitting appeal of substantive matters to our Court and conclude that the agreement may be reviewed only as permitted by court rule. MCR 3.602. There has been no allegation of fraud, duress, or the other factors set forth in MCR 3.602(J). Therefore, we decline to review the agreement further. See also *Marvin, supra,* p 157.

### OTHER ISSUES

Plaintiff also asserts that the court misused its contempt powers in forcing plaintiff to sell the marital home, to pay $2,000 to defendant, and to return her personal property. We find no error in the court's decision.

First, because plaintiff has acknowledged on appeal that he has paid the $2,000, his argument regarding that amount is moot. Furthermore, a court may find a party to a divorce action in contempt when the party fails to fulfill certain obligations of the judgment of divorce. Returning a specific piece of property is included among those

obligations. See *Guynn v Guynn,* 194 Mich App 1; 486 NW2d 81 (1992).

Similarly, we find no error in the court's decision to appoint a receiver to sell the marital home. The arbitrator ruled that plaintiff transferred ownership of the home to his self-created pension plan for the purpose of placing it beyond defendant's reach. The actions of the trial court were entirely proper in light of this finding, and the parties' rights with respect to the marital home were properly adjudicated. See *Thames v Thames,* 191 Mich App 299; 477 NW2d 496 (1991). Furthermore, the trial court did not err in ordering the receiver to sell the marital home. See *Wayne Co Jail Inmates v Wayne Co Chief Executive Officer,* 178 Mich App 634, 658-659; 444 NW2d 549 (1989).

Affirmed.